# EXHIBIT 2

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM
NYSCEF DOC. NO. 1

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

ALAN MARK WEINTRAUB

                              Plaintiff,

                 *-against-*

JP MORGAN CHASE BANK, N.A.

                            Defendant.
-------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index No.

Plaintiff, Alan Mark Weintraub, by and through his undersigned attorney, files this complaint, and sues the defendant, JPMorgan Chase Bank, N.A. ("JP Morgan"), and states:

**I**

**INTRODUCTORY STATEMENT**

1. The matter results from the separation (wrongful termination, age discrimination, improper denial of annual bonus, improper withholding of stock options and severance pay) of Plaintiff's employment with the Defendant. The Plaintiff was improperly and illegally terminated without justification from his position of 14 years as a senior executive, and Defendant improperly withheld previously earned severance pay, bonus pay and stock options from Plaintiff, upon his separation.

2. Although Plaintiff was employed by Defendant for 14 years (from 2006 to 2020) in a senior executive position, he was summarily terminated without explanation, and was denied the standard severance benefits including bonus, severance pay and vested stock options. Such termination, in essence, has destroyed his career and made it impossible for him to obtain comparable alternative employment as well as devasted him and his family financially, Plaintiff seeks appropriate compensation for his losses.

1

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM
NYSCEF DOC. NO. 1

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

## II

## JURISDICTION AND VENUE

3. This is a civil action brought pursuant to New York law, for facts concerning the action, all taken in New York.

4. The Plaintiff, at all times material hereto, was and is a resident of New York County, New York, and, therefore, venue is proper in this Court.

5. The Defendant in addition, conducts business in New York County, and, its agent for service of process, CT Corporation System, is also in New York County. Defendant is, therefore, being served, through its agent, in New York County.

6. Venue is, therefore, proper in New York County. Plaintiff demands a jury trial pursuant to Section 4102 of the New York Civil Practice Rules.

## III

## THE PARTIES

7. The Plaintiff was employed by Defendant, JP Morgan Chase Bank, NA (hereinafter "JP Morgan") from March 22, 2006 through August, 2020.

## IV

## STATEMENT OF THE FACTS

8. Plaintiff is 63 years old and is an attorney in good standing in New York State and has been since 1983.

9. Plaintiff graduated The George Washington University Law School in 1982 in the top 5% of his class and was a member of the Order of the Coif.

10. Plaintiff received a Masters of Law in Taxation (LL.M.) from New York University School of Law in 1983.

11. Plaintiff began working as an Estate Officer in the Estate Settlement Department in New York City (the "Department") at JP Morgan in New York City on March 22, 2006 and at

2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

the time of his termination in August, 2020 was an Executive Director earning approximately $220,000 per year in salary and received benefits (401(k) match, pension plan contributions and subsidized health benefits) valued at approximately $30,000 per year. His aggregate compensation at the time of his termination was approximately $250,000 per annum.

12.     At the time of Plaintiff's termination, there were 5 Estate Officers in the Department, including Plaintiff. Other than Plaintiff, all the other Estate Officers in the Department were in their 30s and 40s.

13. Plaintiff's role as an Estate Officer was highly specialized and not easily transferrable to other jobs.

14. At the time of hire in 2006, Plaintiff was guaranteed by the Managing Director who hired him, Daniel Scavone, that an annual bonus would be part of his annual salary and would be paid in January of each year and Plaintiff received said guaranteed bonus each year in January from 2007 thru 2018.

15. Plaintiff's annual bonus amounted to a significant portion of his annual compensation; Plaintiff's last bonus for the year ended 2018, which was paid in January, 2019, was approximately $62,000. His entire salary (ex-benefits) including said bonus, was approximately $215,000. Thus, his bonus accounted for approximately 30% of his entire salary.

16.     Plaintiff regularly received among the highest possible annual reviews and was regularly one of the Department's best performers.

17.     Plaintiff regularly handled the Department's most complex and largest estates, as he was the most experienced and the most senior member of the Department.

18.     Upon information and belief, in 2019, the cases which Plaintiff was lead Estate Officer accounted for approximately 20% of revenue generated by the entire Estates Settlement Group *nationally*, which had approximately 40 other Estate Officers, including the Estate Officers in the Department.

3

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM

NYSCEF DOC. NO. 1

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

19. Upon information and belief, in or around March, 2019, the Department began looking for an additional Estate Officer for the Department, to bring the total to 6 Estate Officers.

20.     In May or June of 2019, Thomas Martyn, National Head of the Estates Settlement Group left JP Morgan. At about this time, Plaintiff applied to Adam Clark, National Head of Trusts and Estates, to be Team Lead for his Department. Although Plaintiff seemed to be the logical choice for Team Lead, the position went to a much younger woman (approximately 37 years old) who was not an attorney and only had approximately 5 years of estate settlement experience; in contrast, Plaintiff was an experienced trusts and estates attorney with almost 40 years of trusts and estates experience and in addition to working at JP Morgan since 2006, had previously worked at some of New York City's largest and most prestigious law firms.

21. On November 27, 2019, Plaintiff received a call from JP Morgan Assistant General Counsel, Cecilia Cohen. Ms. Cohen informed Plaintiff that that the Defendant was informed of the issuance of a search warrant issued by the Manhattan District Attorney on the Plaintiff's home residence. Plaintiff informed Ms. Cohen that he was shocked to have his home searched and was extremely upset that this had happened as there may have been an investigation of an acquaintance. Plaintiff denied having engaged in any criminal activity. Despite Plaintiff's assertions and without ever bringing Plaintiff into the office to explain his side of the story, he was immediately placed on paid leave which had the effect of terminating his ability to function. At no time was he given any explanation for this constructive firing or given an opportunity to find out the basis for this action. He never had an opportunity to explain or refute Defendant's concerns that would justify this precipitous action.

23. On January 6, 2020, Plaintiff was placed on unpaid leave. At this point, Plaintiff asked Manny Siaw, a Human Resources ("HR") representative employed by the Defendant about his annual bonus which was to be paid in less than 3 weeks and his stock options which were

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM
NYSCEF DOC. NO. 1

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

granted in 2017 and 2018 and were to vest in just 7 days (on January 13, 2020). Plaintiff was informed such bonus and stock options would not be released.

24. While on unpaid leave, but still technically employed by JP Morgan, several business associates and friends called Plaintiff at his business number and were told by his co-worker, Barbara Pearson, that he was no longer working there, which caused Plaintiff embarrassment, loss of reputation in the legal community and emotional distress to him and his family.

25. Plaintiff was terminated in August, 2020.  Plaintiff was given no written or oral reason why he was terminated, although he requested such explanation. At this point, Plaintiff asked HR about his severance pay, and was told he would not receive any because his position was not being eliminated, which is not the case.

26. As of April 5, 2021, Defendant has still not returned Plaintiff's personal belongings which he accumulated over his 14-year career at JP Morgan, including family photographs, personal files, loose coins, personal postage stamps, personal tax information and other property, even though Plaintiff has not been in the office since November 27, 2019 and has requested the same from HR.

27. Plaintiff has not been able to secure regular employment since his termination and has suffered severe economic and emotional harm.

V

**CLAIMS FOR RELIEF**

**COUNT I**

**WRONGFUL DENIAL OFPLAINTIFF'S SEVERANCE PAY**

28. Plaintiff repeats and realleges each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at Length.

5

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM

NYSCEF DOC. NO. 1

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

29. Plaintiff brings this claim for declaratory relief, pursuant to NY CPLR § 3001 (and accompanying documents).

30. At all times material hereto, Plaintiff accumulated separation pay, based upon Defendant's calculations.

31. Based on the terms of the JP Morgan Severance Plan (the "Severance Plan"), a copy of which is attached, Plaintiff was entitled to 42 weeks of severance pay entitling him to approximately $140,000, which has not been issued to him.(See., **Exhibit A**).

32. The Department currently has 5 Estate Officers, and until January, 2021, had only 4 Estate Officers. It is clear that Plaintiff's position was not replaced, thus entitling Plaintiff to severance pay pursuant to the Severance Plan    .

33. Consistent with the statutory authorization, this matter is and may be filed, despite the other causes of action contained in this complaint.

## COUNT II

## WRONGFUL DENIAL OF BONUS

34. Plaintiff repeats and realleges each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at Length.

35. At all times material hereto, Plaintiff received regular bonuses in the years prior to 2019. For the year, 2019, however, Plaintiff received no bonus.

36. Plaintiff was to receive a bonus of approximately $65,000 in January, 2020, which was authorized in November, 2019.

37. Consistent with the statutory authorization, this matter is and may be filed, despite the other causes of action contained in this complaint.

38. As an employee of JP Morgan in 2019, the Plaintiff's claim, therefore, presents a justiciable issue, for which a declaratory remedy may be made under the said statute.

6

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM

NYSCEF DOC. NO. 1

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

39. Plaintiff has made claims to the Defendant for amounts due and owing to him for his bonus for the year, 2019.

40. Such claims include demands for said funds by Plaintiff's counsel, and undersigned attorney in this matter. Copies of the said attorney's letters are made an exhibit to this Complaint.(See., **Exhibit C**).

41. As of the filing of this Complaint, the Defendant has not tendered payment on the account.

42. Plaintiff, therefore demands the monies owed to him.

## COUNT III

## WRONGFUL DENIAL OF LTIP - STOCK OPTIONS

43. Plaintiff repeats and realleges each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at Length.

44. Plaintiff was part of the LTIP-Stock Options Plan (the "LTIP Plan") of JP Morgan, a copy of which is attached. (See., **Exhibit B**).

45. Under the LTIP Plan, Plaintiff was to receive 58 shares of JP Morgan stock on the vesting date, January 13,2020.

46. Section 4.2 of the LTIP Plan specifically states that an employee is entitled to have his shares vest if he is employed on such vesting date

47. Plaintiff was clearly still employed on said vesting date, January 13, 2020.

48. Plaintiff was never given a reason or explanation as to why he did not receive said 58 shares of JP Morgan, nor does any satisfactory explanation seem possible

49. Consistent with the statutory authorization, this matter is and may be filed, despite the other causes of action contained in this complaint.

50. As a former member of the LTIP-Options program, the Plaintiff's claim, therefore, presents a justiciable issue, for which a declaratory remedy may be made under the statute.

7

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM
NYSCEF DOC. NO. 1

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

51. Such claims include demands for said funds by Plaintiff's counsel, and undersigned attorney in this matter. Copies of the said attorney's letters are made an exhibit to this Complaint.(See., **Exhibit C**).

52. As of the filing of this Complaint, the Defendant has neither denied nor objected to said account stated, but also, has not tendered payment on the account.

53. Plaintiff therefore demands monies owed to him.

## COUNT IV

## WRONGFUL TERMINATION RESULTING IN LOST WAGES, EMOTIONAL DISTRESS AND REPUTATIONAL DAMAGE

54.  Plaintiff repeats and realleges each and every fact set forth in the preceding Paragraphs of the Complaint as though each were fully set forth here at Length.

55. Plaintiff planned on working at JP Morgan until his 72nd birthday and his early dismissal has resulted in loss wages of approximately $2,500,000.00.

56. Due to Plaintiff's early dismissal without any justification or any opportunity to refute any allegations made about his conduct or involvement, he has been unable to secure employment, mainly due to the reputational damage said dismissal caused.

57. Plaintiff has experienced extreme emotional distress due to his early dismissal, and has sought professional help to help him deal with the fallout and is currently taking medication for anxiety.

## COUNT V

## AGE DISCRIMINATION IN VIOLATION OF THE AGE IN DISCRIMINATION IN EMPLOYMENT ACT (ADEA0 29 USC 621)

58. The foregoing paragraphs are realleged and incorporated by reference herein.

59. The Defendant's conduct as alleged above constitutes discrimination based on Age discrimination in violation of ADEA and New York Law.

8

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM
NYSCEF DOC. NO. 1

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

60. The Department consisted of only employees in their 30s and 40s, except for Plaintiff who was 63 years old.

61. The Plaintiff was overlooked for promotion and then fired based on his age in violation of New York and Federal law.

62. Since the Defendant did not provide Plaintiff with any reason for his firing, it can only be assumed that the Defendant had discriminatory animus.

**VI**

**JURY DEMAND**

63. Plaintiff seeks a trial by jury of all issues triable as a matter of right by a jury.

**VII**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Alan Mark Weintraub, through counsel, demands judgment against Defendant, for monies owed to him in an amount for past, present and future losses in the amount of Two Million Five Hundred Thousand ($2,500,000.00) Dollars, plus post-judgment interest, and demands declaratory relief in the form of a judgment declaring that the said categories, LTIP-Stock Options, 2019 bonus, and severance pay, are justiciable, and meritorious, demands an accounting, demands attorney's fees for any amounts for which a statutory award is permitted, demands costs, and demands such further relief, including equitable relief, as this Court may deem just and proper, including punitive damages.

Dated: April 26, 2021

Respectfully submitted,

*James S. Kaplan*

James S. Kaplan, Esq.
Greenberg & Kaplan, L.L.P.
*Counsel for Plaintiff*
390 5th Avenue, Suite 900
New York, NY 10018
646-383-3688
james@greenberg-kaplan.com

9

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM

NYSCEF DOC. NO. 1

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

VERIFICATION

STATE OF VIRGINIA          )
COUNTY OF Arlington )ss:

I, ALAN MARK WEINTRAUB, being duly sworn, deposes and says:

I am the Plaintiff in the above entitled action. I have read the foregoing Petition and know the contents thereof. The same are true to my knowledge except to matters therein stated to be alleged on information and belief and to these matters I believe them to be true.

ALAN MARK WEINTRAUB

Sworn to before me on this 2ᵗʰ day

of April, 2021

Notary Public

FILED: NEW YORK COUNTY CLERK 04/26/2021 11:20 AM

NYSCEF DOC. NO. 1

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------
ALAN MARK WEINTRAUB

                              Plaintiff,        **PART 130 CERTIFICATION**

                                      Index No.

-against-

JP MORGAN CHASE BANK, N.A.

                              Defendant.
-----------------------------------------------------------------------X
I, James S. Kaplan, Esq. of Greenberg and Kaplan, LLP hereby certify that all of the papers that I
have served, filed or submitted to the court in this Supreme Court Proceeding are not frivolous as
defined in subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator of the Courts.


    Dated:  New York, New
      York April 26, 2021


                                       GREENBERG AND KAPLAN, LLP

                                       By:_____
                                       James S. Kaplan, Esq.
                                     Attorneys for Plaintiff
                                     390 Fifth Avenue, Suite 900
                                     New York, NY 10018

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

# Summary Plan Description for the JPMorgan Chase U.S. Severance Pay Plan

Effective 5/29/2018

| Questions? |
|---|
| If you have general questions about eligibility for severance pay or related benefits, please contact accessHR at |
| 1-877-JPMChase |
| 1-877-576-2427 |
| *Quick Path*: Enter your Standard ID or Social Security number; press 1; enter your PIN; press 1 |
| If calling from outside the United States: |
| 1-212-552-5100 |
| Service Representatives are available from 8 a.m. to 8:30 p.m., Eastern Time, Monday through Friday except certain U.S. holidays |
| If you have other questions regarding the U.S. Severance Pay Plan, please contact Global People Support. |

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

# Summary Plan Description for the JPMorgan Chase U.S. Severance Pay Plan

At JPMorgan Chase, we value our employees and the contributions they make to our business. And we strive to help our employees find opportunities to make meaningful contributions — either in their current jobs or elsewhere in the Company.

However, there may be circumstances when that's not possible, and, for business reasons, JPMorgan Chase needs to end an employee's employment in instances such as:

- Elimination of a position;

- Sale or closing of all or part of a business unit; or

- Relocation of the Company location where the employee's position is based.

In these circumstances, the JPMorgan Chase U.S. Severance Pay Plan (the "Plan") may provide pay to help the employee manage his or her finances while looking for new work. Under the Plan, it's discretionary whether severance is provided. This summary will provide you with a better understanding of how the Severance Pay Plan works, including how and when severance is paid.

## This Is Your Summary Plan Description and Plan Document

This version of the JPMorgan Chase U.S. Severance Pay Plan summary plan description has been provided as of May 29, 2018, and is intended to provide you with an overview of the Plan as of that date.  This summary plan description also constitutes the Plan document for the JPMorgan Chase U.S. Severance Pay Plan. The terms of the JPMorgan Chase U.S. Severance Pay Plan as described in this summary plan description are effective as of May 29, 2018 with respect to written notices of job elimination under the Plan dated on or after May 29, 2018.  With respect to such notices, it supersedes the U.S. Severance Pay Plan Summary Plan Description and Plan document as in effect immediately prior to May 29, 2018. JPMorgan Chase & Co. expressly reserves the right to amend, modify, reduce, change, or terminate its benefits and plans at any time.  The Plan does not create a contract or guarantee of employment between JPMorgan Chase and any individual. JPMorgan Chase or you may terminate the employment relationship at any time.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

## Table of Contents                                                                    Page

**Important Terms** ...................................................................................................4
**Some Quick Facts** ................................................................................................6
**How the Severance Pay Plan Works** ....................................................................7
    Eligibility .............................................................................................................7
    The Amount of Severance Pay ...........................................................................8
    Severance Payment .............................................................................................9
    Repayment of Severance Pay .............................................................................9
    Loss of Severance Pay .......................................................................................10
    Applying for a Position With the Company .......................................................10
    Obtaining a Position With the Company ............................................................11
    Beneficiary ..........................................................................................................11
    Claiming Severance Pay .....................................................................................11
    Plan Administration ............................................................................................13
    Plan Documents Control .....................................................................................13
    Right to Amend or Terminate .............................................................................13
**General Plan Information** ....................................................................................14
**Your Rights Under ERISA** ..................................................................................15
    Enforce Your Rights ...........................................................................................15
    Assistance with Your Questions .........................................................................15

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

# Important Terms

As you read this summary of the JPMorgan Chase U.S. Severance Pay Plan, you'll come across some important terms related to the Plan. To help you better understand the Plan, some of those important terms are defined here.

| Term | Definition |
|---|---|
| **Alternative Employment** | As determined in the sole discretion of the Plan Administrator, another position with the Company, that generally provides base pay that is comparable to base pay for your current position after considering market conditions and the market value of the current position, and is within a reasonable commuting distance (generally within 50 miles) from the Company location (i.e., JPMorgan Chase location) where your current position is based. |
| **Company** | JPMorgan Chase & Co., a Delaware corporation, as well as its subsidiaries and affiliates that participate in the Plan. |
| **Consolidated Omnibus Budget Reconciliation Act of 1985 as amended (COBRA)** | A federal law that allows you and/or your covered dependents to continue medical, dental, vision and health care spending account coverage on an after-tax basis under certain circumstances if coverage would otherwise have ended. |
| **Continuous Service** **(for purposes of the Severance Pay Plan)** | An uninterrupted period of service with the Company from the most recent date of hire until your employment with the Company terminates. A partial year of service of 183 days or more is considered a year of Continuous Service for purposes of calculating severance pay. Continuous Service includes service with "heritage" organizations (including certain predecessors of the Company) as follows: |
| | • **For Heritage JPMorgan Chase employees who were employed by the Company as of June 30, 2005:** Continuous Service as of June 30, 2005 includes uninterrupted service with JPMorgan Chase including uninterrupted service with heritage organizations (including immediate predecessors). Breaks in employment of more than six months for employees who were rehired before July 1, 2005 are considered to be interruptions of Continuous Service.  In that case, the employee's rehire date designates the start of Continuous Service. |
| | • **For Heritage Bank One employees who were employed by the Company as of June 30, 2005:** Continuous Service as of June 30, 2005 will be determined by the Bank One Service Date (as documented in official company records). |
| | For individuals who are re-employed by the Company on or after July 1, 2005 with a break in employment ending on or after July 1, 2005 of 12 months or less, Continuous Service will be considered uninterrupted; the period of the break in employment counts toward Continuous Service. For individuals who are re-employed by the Company on or after July 1, 2005 with a break in employment that exceeds 12 months, the rehire date will be used to measure the start of Continuous Service. |
| | • **For Heritage Bear Stearns employees who were employed by the Company as of August 31, 2008:** Continuous Service as of August 31, 2008 will be determined by the Bear Stearns Service Date (as documented in official company records). |
| | • **For Heritage Bear Stearns employees re-employed on or after September 1, 2008:** |
| | • For individuals who are re-employed by JPMorgan Chase on or after September 1, 2008, with a break in employment of 12 months or less, ending on or after September 1, 2008, Continuous Service will be considered uninterrupted; the period of the break in employment counts toward Continuous Service. |
| | • For individuals who are re-employed by JPMorgan Chase on or after September 1, 2008 with a break in employment that exceeds 12 months, the rehire date will be used to measure the start of Continuous Service. |
| | • **For Heritage WaMu employees who were employed by the Company as of June 30, 2009:** Continuous Service as of June 30, 2009 will be determined by the applicable WaMu hire date or rehire date (per heritage WaMu guidelines and as documented in official company records). |
| | • **For Heritage WaMu employees re-employed on or after July 1, 2009:** |
| | • For individuals who are re-employed by JPMorgan Chase on or after July 1, 2009, with a break in employment of 12 months or less, ending on or after July 1, 2009, Continuous |

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

| Term | Definition |
|---|---|
| | Service will be considered uninterrupted; the period of the break in employment counts toward Continuous Service. |
| | • For individuals who are re-employed by JPMorgan Chase on or after July 1, 2009 with a break in employment that exceeds 12 months, the rehire date will be used to measure the start of Continuous Service. |
| | Service performed either as a temporary employee (through a temporary agency) or under a contract, agreement or arrangement that purports to treat an individual as an independent contractor, or the employee of a leasing organization, agency or other similar entity, will not be counted under the Plan, even if the individual is subsequently determined (by judicial action or otherwise) to have been a common law employee of the Company at the time the service was performed and even if the individual subsequently becomes an eligible employee under the Plan. |
| | Service with a company at the time of its acquisition by the Company will count toward Continuous Service if so provided under the terms of the applicable purchase agreement. |
| **Eligible Compensation for the Severance Pay Plan** | • For salaried employees, your weekly base salary, including any applicable shift differential and language differential, but excluding all bonuses, commissions, overtime, and other forms of special or incentive remuneration. This amount is multiplied by 52 to determine your annual eligible compensation. |
| | • Note: Compensation greater than $400,000 per year is disregarded for purposes of determining Eligible Compensation. |
| | • For hourly-paid employees, your hourly rate of pay times your regularly-scheduled weekly hours, including any applicable shift differential and language differential, but excluding all bonuses, commissions, overtime, and other forms of special or incentive remuneration. This amount is multiplied by 52 to determine your annual eligible compensation. |
| | • If you are a commissioned employee without a base salary, please refer to your Benefits Pay Notice that sets forth the amount, if any, of eligible compensation recognized under the Plan. |
| **Notice Date** | The date that you are provided notice in writing under the Plan that your employment with the Company is ending for reasons specified under the Plan, and that you will be eligible to receive severance pay, subject to the Company's receipt of an executed Release Agreement. The Notice Date is generally 45 calendar days prior to your termination date, unless state or federal law requires a longer "notice period" or the Company determines that it is appropriate to extend the timeframe in a manner consistent with Section 409A of the Internal Revenue Code. Employees are generally required to work during the notice period. Depending upon the needs of your business, you may be given a portion of your notice period as "non-working," meaning you would not be required to perform work. Any period of non-working notice will reduce the severance paid to the employee by a correlating amount. |
| | If you accept a job outside of the Company during this 45-day period, the business needs of your area do not otherwise require you to work through your termination date, and you are not covered by any other agreement regarding your departure date, you would be paid up to your last day worked, the official 45-day notice would end (i.e., you would not be paid the remainder of the notice period), and you would receive your severance payment, provided you have executed and not revoked the Release Agreement. |
| **Other Employer** | Any entity that assumes operations or functions formerly carried out by the Company, any entity to which the Company has outsourced any of its functions or sold any of its assets or operations or any entity that offers you employment at the request of or pursuant to an agreement or arrangement with the Company. |
| **Release Agreement** | A written agreement in a form designated by the Company pursuant to which, among other obligations, you release the Company from any claims that you might have against it arising out of the employment relationship. |

5

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

## Some Quick Facts

| | |
|---|---|
| **Discretionary Plan** | The Plan is a voluntary arrangement sponsored by the Company. The Company is not required by law to provide severance or a severance pay plan, and the Plan Administrator retains full and sole discretion to determine eligibility and the amount of severance pay, as well as to interpret the Plan. |
| **Severance Pay** | Your severance pay amount is equal to a number of weeks of Eligible Compensation based on years of Continuous Service (please see the chart in "The Amount of Severance Pay" on page 8). |
| **Form of Severance Payment** | You will receive a single lump sum payment of your severance pay through payroll following your termination date. |
| **Other Terminations** | The Plan does not provide severance pay:  (i) for voluntary terminations; (ii) for involuntary terminations resulting from unsatisfactory performance, Code of Conduct violations, policy violations, attendance, or lateness; (iii) if the Release Agreement is not executed; or (iv) for any reasons other than those identified in the Plan. |
| **Sale of Business Unit or Transfer** | The Plan is intended to provide severance pay in the event of an involuntary job loss. If you're offered continued employment with the purchaser of your business unit or an Other Employer with which the Company has made employment arrangements, you are not eligible for severance pay, unless the Company issues you a written notice of job elimination and you meet the other eligibility requirements of the Plan. |
| **Changes in Termination Date** | The Company may, in writing, reschedule or rescind your termination date. If your termination date is rescheduled, you will be expected to work until your job activities end or until a mutually agreed upon date. (You may be permitted to accelerate your termination date if you have received a notice letter, you must commence an external job prior to your termination date, and your manager determines that the needs of the business area do not otherwise require you to work through your termination date.)  If you have already executed a Release Agreement, you may be required to execute another Release Agreement prior to your newly-scheduled termination date. If your termination date is rescinded, you will not be considered to have lost your job and you will not be eligible for severance pay under the Plan. |

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

# How the Severance Pay Plan Works

The current general guidelines for the Plan are described below.

## *Eligibility*

The following criteria are currently used to determine eligibility under the Plan. You are eligible to receive severance pay if you are a full-time or part-time employee who is regularly scheduled to work 20 hours or more a week and who is:

- on a U.S. payroll of the Company or a U.S. expat (if not on the U.S. payroll of the Company); and

- subject to FICA withholding on compensation paid by the Company (unless a U.S. expat); and

- not employed in one of a limited number of positions that is ineligible for severance pay as determined by the line of business; and

- In active status, not on a leave of absence*; and

- Not covered under another severance arrangement or under a collective bargaining agreement (whether or not you receive severance pay under that arrangement or agreement); and

- Involuntarily terminated by the Company and you receive written notice of job elimination due to any of the following reasons (and you are not offered Alternative Employment with the Company.  Please see the definition of "Alternative Employment" on page 4):

  - Elimination of your position;

  - Sale or closing of all or part of your business unit; or

  - Relocation of your position to a site that is more than a reasonable commuting distance (as determined by the Company  in its sole discretion, but generally more than 50 miles) from the Company location (i.e., JPMorgan Chase location) where your current position is based.

*(Employees who are performing some service for the Company while receiving long-term disability benefits are not considered to be in active status under the Plan.)

If you meet all of the above requirements, you will be eligible for severance pay under the Plan only if you're notified by the Company in writing that you're eligible for severance pay as a result of your termination and you timely execute and return, and do not revoke, the Release Agreement in the form presented to you by the Company.

**Please Note:** Any individual performing services either as a temporary employee or under a contract, agreement or arrangement that purports to treat him or her as an independent contractor, or the employee of a leasing organization, agency or other similar entity, even if he or she is subsequently determined (by judicial action or otherwise) to have instead been a common law employee of the Company, is not eligible to participate in the Plan.  Also, employees regularly scheduled to work fewer than 20 hours per week, interns, and occasional/seasonal employees are not eligible to participate in the Plan.

In accordance with the JPMorgan Chase Flight Duty Policy and notwithstanding any other provision of the Plan, JPMorgan Chase pilots who have not transferred to a non-flight position within the Company by their 65th birthday will be involuntarily terminated by the Company and eligible for severance pay under the Plan, subject to their timely execution and return of a Release Agreement in the form presented by the Company.

The Company's decisions about whether to involuntarily terminate an employee or to issue a notice of job elimination are within the Company's sole discretion and are not subject to review under the Plan or by the Plan Administrator.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

## *The Amount of Severance Pay*

If you are eligible for severance pay hereunder, the Plan provides a number of weeks of severance pay calculated based upon your Eligible Compensation and years of Continuous Service as of your termination date. The following chart shows the number of weeks of severance pay available to eligible employees based upon their years of Continuous Service, unless they are eligible for severance pay described under an Exhibit to the Plan. The Company may add or remove such Exhibits to the Plan from time to time, and such Exhibits shall be part of the Plan. The provisions of an Exhibit supersede the provisions of the Plan to the extent necessary to eliminate inconsistencies between the Plan and such Exhibit. (Please see the definitions of "Eligible Compensation for the Severance Pay Plan" and "Notice Date" on page 5.)

For purposes of calculating severance pay under the following chart:

- After you complete one year of Continuous Service, a partial year of service of 183 days or more is treated as an additional year of service for purposes of calculating severance pay (for example: one year and 184 days = two years).

- Part-time employees regularly scheduled to work 20 hours or more per week on their Notice Date will receive severance at their part-time rate of pay, even if they were formerly full-time employees. In addition, if your scheduled-hours status (e.g., full-time/part-time status) changes after you receive written notice of job elimination but before your termination date, your severance will be based on the scheduled-hours status that you held at the time you received written notice.

- Eligible employees in sales positions who do not have a base salary should refer to their Benefits Pay Notice that sets forth the amount, if any, of eligible compensation recognized under the Plan.

- The charts summarize the amount of severance pay depending on whether your Eligible Compensation is less than $150,000 per year, or if your Eligible Compensation is $150,000 or more per year. Note: Compensation greater than $400,000 per year is disregarded for purposes of determining Eligible Compensation.

- If you receive non-working notice, the number of weeks of severance pay you receive will be reduced by the number of weeks of non-working notice you receive.

### (Eligible Compensation of Less than $150,000/Year)

| Years of Service | Weeks of Severance | Years of Service | Weeks of Severance |
|:---:|:---:|:---:|:---:|
| <1 - 1 | 4 | 11 | 25 |
| 2 | 4 | 12 | 28 |
| 3 | 7 | 13 | 31 |
| 4 | 8 | 14 | 34 |
| 5 | 10 | 15 | 37 |
| 6 | 12 | 16 | 40 |
| 7 | 14 | 17 | 43 |
| 8 | 16 | 18 | 46 |
| 9 | 19 | 19 | 49 |
| 10 | 22 | 20 or more | 52 |

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

### (Eligible Compensation of $150,000 or More/Year)

| Years of Service | Weeks of Severance | Years of Service | Weeks of Severance |
|---|---|---|---|
| <1 - 1 | 16 | 11 | 33 |
| 2 | 16 | 12 | 36 |
| 3 | 16 | 13 | 39 |
| 4 | 16 | 14 | 42 |
| 5 | 16 | 15 | 45 |
| 6 | 18 | 16 | 48 |
| 7 | 21 | 17 | 49 |
| 8 | 24 | 18 | 50 |
| 9 | 27 | 19 | 51 |
| 10 | 30 | 20 or more | 52 |

**Please Note:** A partial year of service of 183 days or more is considered a year of service for purposes of calculating severance.

Severance pay that would otherwise be payable under this schedule shall be reduced or eliminated to the extent necessary to avoid liability under Section 280G of the Internal Revenue Code.

## *Severance Payment*

If you have met the requirements to be eligible for severance, you will receive a single lump sum payment of your severance pay through payroll following your termination date.  No payment will be made unless you sign and return the Release Agreement within 45 days.  Payment will be made within two regularly-scheduled pay periods after your termination date (and contingent upon the receipt of your signed Release Agreement).

Depending upon the needs of your business, you may be required to work during the notice period or be placed in an "on call" status and be required to perform transitional work when asked.  This "on call" status is considered to be a working notice period during which time you may be expected to perform job duties. Alternatively, you may be given a portion of your notice period as "non-working," meaning you would not be required to perform work.  Any period of non-working notice will reduce the severance paid to you by a correlating amount.

For example: You receive written notification of job elimination on May 1 (with a termination date of June 14). Based on your Continuous Service, you are eligible to receive 10 weeks of severance.  Your manager places you on a nonworking notice period from May 15 through June 14.  Since the 10 weeks of severance pay is offset by the nonworking notice period (i.e., approximately four weeks nonworking in this example), you would be eligible for approximately six weeks of severance pay to be paid in a lump sum following your termination date.

Severance pay will be reduced by any amount owed by you to the Company and all lawful withholdings.  **Please Note:** For information related to continuation of health care benefits (i.e., medical, dental, vision,) under the Consolidated Omnibus Budget Reconciliation Act (COBRA), please see the **As You Leave Guide** or **As You Retire Guide**. The Guides are available on me@jpmc > Health and Life > Leaving the company> As You Leave Guide or As You Retire Guide.

## *Repayment of Severance Pay*

In the event that you secure another position with the Company after your employment has terminated, you must repay the "unused" portion of your severance prior to being re-employed.  For example, an employee who received 16 weeks of severance in a lump sum and was reinstated 12 weeks after termination would have to repay four weeks of severance at the time of re-employment.  If that same employee were re-employed after 16 weeks, then no repayment would be required.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

# Important Information

In addition to the details already provided, here's some other important Plan information you should be aware of.

## *Leave Status*

You are not eligible for severance pay while you are on a leave of absence or if you are receiving long-term disability (LTD) benefits under a Company-sponsored plan.

If your position is selected for job elimination while you are on a leave of absence (and you meet all other severance eligibility requirements), you are generally eligible to receive severance if you are able to return to work within the maximum amount of leave time permitted (i.e., Short-Term Disability Leave, Parental Leave, Personal Leave-Unpaid, Family and Medical Leave, Military Leave, or job-protected time off under another JPMorgan Chase policy, such as the Accommodating Disabilities and Temporary Work Restrictions Policy).

If you did not receive a Notice Letter before your leave of absence commenced, and you are released to return to work following long-term disability (LTD) or you exhaust LTD benefits, you are not eligible for severance. Employees who are performing some services for the Company while receiving partial LTD benefits are considered to be on leave and are not eligible for severance pay.

If you receive a Notice Letter and then begin a leave of absence, the Notice Period will continue during your leave of absence.  If your approved leave of absence extends longer than the Notice Period, your termination will occur at the conclusion of your approved leave of absence and you will receive severance if you have executed the Release Agreement.

## *Loss of Severance Pay*

Even if you receive a written notice that you will be eligible to receive severance pay, you will not receive severance pay if any of the following apply:

- You obtain a position with the Company before your termination date (and you remain in the position beyond 90 days, as explained in the Obtaining a Position With the Company section on page 11);

- Your job performance falls below acceptable levels or the Company determines that you have violated the Code of Conduct or engaged in misbehavior before your termination date;

- You resign before your termination date (Note: You may be permitted to accelerate your termination date if you have received a notice letter, you must commence an external job prior to your termination date, and your manager determines that the needs of the business area do not otherwise require you to work through your termination date.); or

- You fail to timely execute and return, or you revoke the Release Agreement.

Even if your severance pay has been paid, if the Company determines that you engaged in misconduct while you were employed by the Company, or if you solicit customers or employees of the Company during a period in which you are restricted from doing so, or if you violate the Company's Code of Conduct, you will be required to repay to the Company any severance pay that has been paid prior to the determination by the Company.

## *Applying for a Position With the Company*

If you apply for a position with the Company and you later determine that you do not want to pursue the position, you should withdraw your application or interest in the position as soon as possible.  If you withdraw your application or interest in the position, or if you are offered the position and decline it, you will continue to be eligible for severance pay and related benefits (provided you continue to meet all other necessary requirements).

**FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM**
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

## Obtaining a Position With the Company

**Prior to Termination of your Employment:**

If you receive a Notice Letter and subsequently accept another position with the Company prior to the termination of your employment, there is a 90-day period of time for you and your manager to determine whether the position is a good fit. The Notice Period runs concurrently with this 90-day timeframe. If within 90 days of your placement in the new position, you or your manager determines that the position is not suitable, you are eligible to receive the severance outlined in your Notice Letter, provided you execute another Release Agreement at the end of the placement and you terminate employment with the Company.  If you begin a leave of absence during the 90-day period, the 90-day period will be suspended at the beginning of the leave and will resume upon your return to work.

**After Termination of your Employment:**

If you receive a Notice Letter and subsequently accept another position with the Company after your employment has terminated (but within the number of Severance weeks for which you have been paid), you must repay any "unused" portion of severance prior to being re-employed.  (Refer to "Repayment of Severance Pay" on page 9).  If within 90 days of placement in the new position, you or your manager determines that the position is not suitable, you are eligible to receive any remaining severance balance and resume any other severance-related benefits and services for the balance of the applicable period, provided you execute another Release Agreement at the end of the placement and you terminate employment with the Company.

Please Note:

- The 90-day period described above does not apply if business needs change resulting in reversal of the job elimination and you are instead offered Alternative Employment with the Company.  Please see the definition of "Alternative Employment" on page 4.

- For each job elimination, there is generally one 90-day period permitted per employee.

## Beneficiary

In the event of the death of an individual for whom severance is payable under the Plan, any unpaid severance will be paid to the beneficiary named for the individual's basic life insurance. If no beneficiary had been named for basic life insurance, the payment will be made to the individual's estate.  If the employee did not execute the Release Agreement before his or her death, the employee's beneficiary or estate will be required to do so in order to receive severance pay under the Plan.

## Claiming Severance Pay

You do not have to apply for severance pay. You will be advised personally in writing that you will be eligible to receive severance pay under the Plan. The Plan Administrator has delegated to Corporate Employee Relations Americas the authority to decide initial claims under the Plan.  If you do not receive a job elimination notice and believe that you are entitled to severance pay under the Plan, or if you dispute the amount of severance pay you receive, you may write to Corporate Employee Relations at:

JPMorgan Chase
Corporate Employee Relations
28 Liberty Street, Floor 22
Mail Code: NY1-A302
New York, NY 10005-1401
**Personal and Confidential**

Or email: corporate.er.mailbox@jpmchase.com

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

Your written claim must be received within 60 days after the event giving rise to the claim. Any written claims received more than 60 days after the event giving rise to the claim will be denied. You should include a statement of the facts and the reason why you believe that you are entitled to severance pay. Corporate Employee Relations will respond in writing within 60 days of receiving your written claim for severance pay. Corporate Employee Relations is allowed to take an extension to notify you of a denial of severance pay, if necessary. If Corporate Employee Relations needs additional time to review your claim, you will be notified in writing of the extension, and given an explanation of the reason for the extension and the date that you can expect a decision on your claim for severance pay.

If your initial claim for severance pay is denied, you will be provided with an explanation of the denial, which will include the following:

- The specific reason(s) for the denial;

-  References to the specific Plan provisions on which the denial is based;

-  A description of any additional material or information needed to process your claim and an explanation of why the material or information is necessary; and

- A description of the Plan's appeal procedures and time limits, including a statement of your right to bring a civil action under ERISA after, and if, your appeal is denied.

If your initial claim for severance pay is denied, you – or your authorized representative – may appeal the decision in writing to the Plan Administrator at:

JPMorgan Chase Severance Pay Plan Administrator
JPMorgan Chase & Co.
28 Liberty Street
22nd Floor, Mail Code NY1-A302
New York, NY 10005-1401
**Personal and Confidential**


You have 60 days to appeal a claim for severance pay that is denied under the Plan.  In your appeal, you have the right to:

- Submit written comments, documents, records, and other information relating to your claim;

- Request, free of charge, reasonable access to, and copies of, all documents, records, and other information that:

  - Was relied upon in denying the severance pay;

  - Was submitted, considered, or generated in the course of denying the severance pay regardless of whether it was relied on in making the decision; and

  - Demonstrates compliance with the administrative processes and safeguards required in denying the severance pay.

- A review of your claim that takes into account all comments, documents, records, and other information submitted or considered in the initial decision to deny the severance pay.

The Plan Administrator will respond within 60 days of receiving your written appeal.  The Plan Administrator is allowed to take an extension of an additional 60 days to notify you of a denial of severance pay, if necessary. If an extension is necessary, you will be notified before the end of the original notification period.  This notification will include the reason(s) for the extension and the date you can expect to receive a decision on your appeal for the denied severance pay.

If your appeal for severance pay is denied, the Plan Administrator will provide an explanation for the denial, which will include the following:

- The specific reason for the denial;

- References to the specific Plan provisions on which the denial is based;

- A description of any additional material or information needed to process your appeal and an explanation of why the material or information is necessary;

- A statement that you're entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim; and

- A statement of your right to bring a civil action under ERISA.

12

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM          INDEX NO. 154006/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 04/26/2021

**If you bring a civil action under ERISA, you must commence the action within one year of the denial of your appeal for severance pay, regardless of any state or federal statutes relating to limitations of actions.**

If your claim or appeal is approved, you will still be required to sign a Release Agreement and meet all other eligibility requirements of the Plan in order to receive severance pay.

## Plan Administration

The Plan Administrator has full, sole and absolute discretion to interpret and administer the Plan, including, but not limited to determining whether an eligible termination has occurred, whether the circumstances of any particular separation makes payment of severance pay under the Plan appropriate, the amount of severance pay, and the form of the Release Agreement to be signed by the participating employees. The Plan Administrator may delegate this authority, in its sole discretion.  The decisions of the Plan Administrator or its delegates shall be final and binding on all employees.

## Plan Documents Control

Only the official Plan documents are used to determine severance pay eligibility or resolve claims disputes. Payments granted under the Severance Pay Plan cannot be assigned.   You have the right to request and receive copies of the controlling Plan documents from Corporate Employee Relations.  This summary plan description also constitutes the Plan document for the JPMorgan Chase U.S. Severance Pay Plan.

## Right to Amend or Terminate

JPMorgan Chase reserves the right to amend, modify, reduce severance pay under, or terminate any provision(s) of the Plan at any time by act of the Plan Administrator. The Company may also terminate the Plan at any time.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

# General Plan Information

| | |
|---|---|
| **Plan Sponsor** | JPMorgan Chase Bank, National Association<br>28 Liberty Street, Floor 22<br>Mail Code: NY1-A302<br>New York, NY 10005-1401<br>**Personal and Confidential** |
| **Plan Year** | January 1 – December 31 |
| **Plan Administrator** | JPMorgan Chase Severance Pay Plan Administrator<br>JPMorgan Chase & Co.<br>28 Liberty Street<br>22nd Floor, Mail Code NY1-A302<br>New York, NY 10005-1401<br>**Personal and Confidential** |

**Fiduciaries**

**About Plan Fiduciaries**

The Plan "fiduciary" is the individual or organization responsible for Plan administration, claims administration, and managing Plan assets. The Plan fiduciary has a duty to administer the Plan prudently and in the best interest of all Plan members and beneficiaries.

**Prudent Actions by Plan Fiduciaries**

In addition to establishing the rights of Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. Certain individuals who are responsible for the plans are called "fiduciaries," and they have a duty to administer the Plan prudently and in the interest of you, other Plan participants, and beneficiaries. While participation in the Plan does not guarantee your right to continued employment, no one — including your employer or any other person — may terminate you or otherwise discriminate against you in any way to prevent you from obtaining your severance pay or exercising your rights under ERISA.

| | |
|---|---|
| **Agent for Service of Legal Process** | Legal Papers Served<br>JPMorgan Chase & Co.<br>4 Chase Metrotech Center<br>Floor 18<br>Mail Code: NY1-C312<br>Brooklyn, NY, 11245-0001<br>Service of legal process may also be made upon a Plan trustee or the Plan Administrator. |
| **Employer Identification Number** | 13-4994650 |
| **Plan Number** | 512 |

14

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

# Your Rights Under ERISA

The Employee Retirement Income Security Act of 1974 (ERISA) gives you certain rights and protections while you are a participant in the Plan. It is highly unlikely you will need to exercise these rights, but it is important that you be aware of what they are. ERISA provides that all Plan participants are entitled to:

- Examine, without charge, at the office of the Plan Administrator, all Plan documents including insurance contracts and copies of all documents filed by the Plans with the U.S. Department of Labor, such as detailed annual reports (Form 5500 Series).

- Obtain, upon written request to the Plan Administrator, copies of all Plan documents and other Plan information (e.g., insurance contracts, Form 5500 Series, and updated summary plan descriptions). The Plan Administrator may charge you a reasonable amount for the copies.

- Receive a summary of the Plan's annual financial reports. (The Plan Administrator is required by law to furnish each participant with a copy of such reports.)

## Enforce Your Rights

If your claim for severance pay is denied or ignored, in whole or in part, you have the right to know why this was done, to obtain copies of documents relating to the decision free of charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance:

- If you request a copy of the Plan documents or the latest annual report from the Plan Administrator and do not receive it within 30 days, you may file suit in a U.S. federal court. In such a case, the court may require the Plan Administrator to provide the information and pay up to $110 a day until you receive the materials, unless they were not sent because of reasons beyond the control of the Plan Administrator.

- If it should happen that the Plan fiduciaries misuse Plan money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a U.S. federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim to be frivolous.

## Assistance with Your Questions

If you have any questions about the JPMorgan Chase Severance Plan, you should contact the Plan Administrator at the address shown in "Plan Administrator" on page 13. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Regional Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or:

> Division of Technical Assistance and Inquiries
> Employee Benefits Security Administration
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, D.C. 20210

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration or by visiting www.dol.gov/ebsa via the Internet.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

**Final Document**

# JPMorgan Chase & Co.

**PERFORMANCE-BASED INCENTIVE COMPENSATION PLAN**
**Effective as of January 1, 2006 (as amended)**

## SECTION 1

### PREAMBLE

The purpose of the Performance-Based Incentive Compensation Plan ("Plan") is to provide a program that aligns annual performance-based incentive compensation awards levels to the performance of Eligible Employees during such period, taking into account the performance of JPMorgan Chase & Co., the Participating Company, the Business Unit employing the Eligible Employee and the Eligible Employee. It is designed to attract, motivate and retain those individuals employed by JPMorgan Chase & Co. and its Subsidiaries with an opportunity to receive performance-based incentive compensation described in the Plan. In order to realize these objectives, Stock-Based Awards are intended to further motivate the individual to remain in the employ of the Participating Company for future years.

Nothing in this Plan shall be construed to alter the at-will employment relationship between the Employees and any Participating Company. The provisions of this Plan reflect the policies of the Participating Companies in providing performance-based incentive compensation years prior to the effective date.

Further, this Plan is intended to be a performance-based compensation plan within the meaning of Section 409A of the Internal Revenue Code and Treasury regulations promulgated thereunder. By way of further clarification, Section 4.3 off the Plan is intended to satisfy the final Treasury regulations dealing with subjective performance criteria.

## SECTION 2

### DEFINITIONS

The following terms shall have the meaning set forth below, unless a different meaning is plainly required by the context.

(a) "Award" shall mean an amount of performance-based incentive compensation determined under the Plan, which may be paid in the form of cash, restricted stock units, options, stock appreciation rights or such other form of compensation as JPMorgan Chase may specify.

(b) "Award Agreement" shall mean a document provided to a recipient of an Award that evidences the grant of a Stock-Based Award or another form of compensation awarded under the Plan and specifies the terms and conditions of such award.

(c) "Business Unit" shall mean a division, department or a function of a Participating Company.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

2

(d) "Effective Date" shall mean January 1, 2006. This Plan shall be effective for the 2006 Performance Year and thereafter.

(e) "Eligible Employee" shall mean an Employee described in Section 4.2.

(f) "Employee" shall mean any person employed by a Participating Company, whether or not an Eligible Employee.  An individual is not an Employee for purposes of  this Plan  if  (i) his/her compensation is paid solely in the form of a commission or fee under contract, (ii) he/she is classified by the Participating Company as an independent contractor or agent, (iii) he/she is classified by the Participating Company as an employee of an independent contractor or agent, or (iv) he/she is classified by the Participating Company as any status other than that of a common law employee of the Participating Company, regardless of whether such individual (whether or not described in (i), (ii) or (iii) above) is subsequently determined to be a common law employee of a Participating Company as the result of administrative agency or judicial proceeding.

(g)  "JPMorgan Chase" shall mean JPMorgan Chase & Co. or any successor thereto.

(h) "Participating Companies" or "Company" shall mean JPMorgan Chase and/or any Subsidiary which, with the consent of the JPMorgan Chase, participates in the Plan.

(i) "Payment Date" shall have the meaning ascribed to it in Section 5.2(a).

(j) "Performance Year" shall mean the calendar year unless JPMorgan Chase designates a different period.

(k) "Plan" shall mean this JPMorgan Chase & Co. Performance-Based Incentive Compensation Plan.  Participating Companies and Business Units may refer to the Plan with reference to their internal business names, such as the Investment Bank Incentive Compensation Plan.

(l) "Stock-Based Awards" shall have the meaning set forth in the JPMorgan Chase & Co. 2005 Long Term Incentive Plan or successor plan.

(m) "Subsidiary" shall mean any corporate entity in which JPMorgan Chase owns directly or indirectly eighty percent or more of the outstanding stock.

(n) "162(m) Plan" shall mean the Key Executive Performance Plan of JPMorgan Chase & Co., a performance-based plan adopted to satisfy the requirements of Section 162(m) of the Code.

## SECTION 3

## ADMINISTRATION

The Plan shall be administered by JPMorgan Chase which shall have the authority to

- determine whether performance-based incentive compensation funding shall be established for  any particular Performance Year;

- select Eligible Employees who may be granted Awards;

- determine

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM          INDEX NO. 154006/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 04/26/2021

3

    ○  individual performance criteria applicable to an Eligible Employee;

    ○  whether the individual performance criteria have been satisfied;

- determine the terms and conditions of Awards and the Award Agreement, including the amount of any Award;

- interpret the provisions of the Plan and the Award Agreements;

- establish, amend, and rescind any rules and regulations relating to the Plan; and

- make all other determinations necessary or advisable for the administration of the Plan.

JPMorgan Chase may also correct any defect, supply any omission, and reconcile any inconsistency in the Plan or in any Award, or between the Plan and any Award Agreement, in the manner and to the extent it shall deem desirable to effectuate the purposes of the Plan. JPMorgan Chase may delegate its authority and responsibilities under the Plan to any person or persons or committee in its discretion, including Business Units or Participating Companies. The determinations and actions of the JPMorgan Chase or its delegate in the administration of the Plan shall be final, conclusive and binding on all parties.


**SECTION 4**

**PERFORMANCE-BASED COMPENSATION ORGANIZATIONAL AND INDIVIDUAL CRITERIA; FUNDING; PARTICIPATION**

    4.1   **Establishment of Incentive Funding**.  The funding of the annual performance-based incentive compensation under this Plan is discretionary, subject to the determination of the Compensation and Management Development Committee of the Board of Directors of JPMorgan Chase (or any successor committee); provided that the funding for any Eligible Employee covered by the 162(m) plan shall be based on that plan.  A Business Unit or Participating Company is not required to make individual Awards equal to the incentive funding available for a particular year.

    4.2   **Participation in the Plan**.  JPMorgan Chase or (if so delegated, the Business Unit or Participating Company) may designate an Employee as eligible for an Award ("Eligible Employee"). Such Eligible Employee may receive an Award; **provided** that

- funding is established for a Performance Year pursuant to Section 4.1,

- the performance of the Eligible Employee satisfies applicable criteria set forth in Section 4.3 for the Performance Year, as determined by JPMorgan Chase or its delegate.

Notwithstanding the above, an Award is only made to the Eligible Employee under this Plan if he/she is employed on the Payment Date specified by the JPMorgan Chase.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

4

The amount and the form of any Award shall be determined in the sole and absolute discretion of JPMorgan Chase, including the requirement for the execution by such Eligible Employee of such agreements as JPMorgan Chase shall specify.  No individual Awards under this Plan are guaranteed at any time during the Performance Year; provided that in the case of new hire and retention agreements,  an  Award  specified therein may guaranteed as to amount but all other terms and conditions of this Plan shall apply.

4.3     **Individual Performance Criteria**.  In determining whether an Award shall be made to an Eligible Employee, JPMorgan Chase (or if so delegated, each  Business Unit or Participating Company) shall measure the performance of an Eligible Employee based its assessment of the contributions made to the employing Business Unit during the Performance Year using the subjective performance criteria so determined:

- Profitability -- Success in

    o  Financial performance as compared to budget, prior year or  competitors, including expense controls, net income and other  financial measures.

    o  Improving the quality of earnings.

    o  Achieving expense reduction goals.

    o  Maintaining capital and leverage ratios in accordance with targeted levels.

- Investing for Growth-- Success in

    o  Executing investment plans.

    o  Achieving real revenue growth by market share gains and performance as compared to competitors.

    o  Deepening relations with customers.

    o  Leveraging the JPMorgan Chase product platform.

- Executing Major Projects—Success in

    o  Reaching mission critical project milestones with respect to, and in completing, major corporate and Business Unit projects.

    o  Mitigating operational risks associated with such projects.

    o  Insuring that clients (internal and external) consider the completion of the project as a success.

- Managing People and Developing Talent---Success in

    o  Increasing diversity representation.

    o  Recruiting, developing and training top talent.

5

- o   Developing a strong leadership culture.

- • Operating with Integrity/Protecting the Franchise---Success in

  - o   Living up to JPMorgan Chase's Operating Principles, as well as compliance with the Code of Conduct.

  - o   Maintaining good standing with regulators and sustaining a company wide culture of compliance with law and ethical standards.

  - o   Avoiding reputational and litigation issues.

  - o   Maintaining a strong control environment.

  - o   Managing risk.

- • Other criteria

  - o   Generation of revenue from efforts of an Employee, including that derived from management of a team.

  - o   Performance of complex work assignments without supervision and level of skill shown in such performance.

  - o   Adherence to the work ethic of the Business Unit.

  - o   Performance reviews exceeding expectations.

  - o   Such other subjective performance-based criteria as JPMorgan Chase may deem appropriate for the particular job function, so long as determined within 90 days after the start of the Performance Year.

In evaluating the performance contribution of an Eligible Employee, those criteria that are not applicable to the job function or role of the Employee shall be disregarded and such determination shall be that solely of JPMorgan Chase.  The determination of the applicable criteria and whether the Eligible  Employee has satisfied such performance-based criteria sufficiently to be entitled to an Award shall also  be in the sole discretion of the JPMorgan Chase (or if so delegated, the  management of the Business Unit  or  the Participating Company).  Such evaluations shall occur as of the end of the Performance Year. By way of further clarification, the determination that any subjective performance criteria have been met shall not made by the Eligible Employee or a family member of the Eligible Employee as defined in the final regulations promulgated  under Section 409A.

## SECTION 5

## AWARDS

5.1   **Determination of Awards**.  As soon as reasonably practical following the end of the applicable Performance Year, and after having determined the contribution of, and

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

6

performance made by, an Eligible Employee, JPMorgan Chase (or if so delegated, the Business Unit or Participating Company) shall determine the amount of each individual Award.

    5.2   **Payment of Awards**.  (a)  JPMorgan Chase shall specify a payment/distribution date of the Awards ("Payment Date") in the calendar year following the end of the Performance Year ("Payment Date"); **provided** that no Award shall be made to an Eligible Employee unless employed on the Payment Date.  Accordingly, an Eligible Employee has no interest in an Award until paid.

    (b)   Each individual Award shall specify the amount or percentage of the performance-based incentive compensation that shall be distributed in the form of cash, Stock-Based Awards or such other form as may be designated by JPMorgan Chase. Notwithstanding the foregoing, if the Award Agreement of a Participant who is not a United States citizen and who works outside of the United States so provides, a Participating Company may deliver property or make contributions to a trust in lieu of providing incentive compensation hereunder.

    (c)   If JPMorgan Chase so advises an Eligible Employee, the cash portion of any performance-based incentive compensation may be deferred pursuant to the terms of the 2005 Deferred Compensation Program of JP Morgan Chase & Co. and Participating Companies, or any successor plan or any applicable deferral program available to Eligible Employees who are based in locations outside the United States.

    (d)   The portion of any performance-based incentive compensation payable as a Stock-Based Award shall be granted pursuant to the terms of an approved equity compensation plan or arrangement as determined by JPMorgan Chase in its sole discretion.

    (e)   It is expressly intended that the Awards whether or not vested or immediately payable are designed to promote continued employment and future services from an Eligible Employee, as well as reward for performance.

    (f)   All Awards will be reflected in Award Agreements signed by an authorized officer of JPMorgan Chase.  No employee or officer of JPMorgan Chase is authorized to make oral promises or representations about Awards under this Plan.

## SECTION 6

## TAXES AND OTHER WITHHOLDING

    Participating Companies shall have the right to (i) deduct from all amounts payable to any recipient of an Award (whether amounts are payable in cash), and each recipient shall make appropriate arrangements to pay the withholding amounts related to any taxes or other amounts required by law to be withheld, and (ii) offset any amounts otherwise payable hereunder by any amount the recipient owes a Participating Company, to the full extent permitted by law.

## SECTION 7

## NON-TRANSFERABILITY

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

7

No rights hereunder or Awards shall be assignable or transferable except as specified, and no right or interest in any Award shall be subject to any lien, obligation or liability of the Eligible Employee.

## SECTION 8

## NO RIGHT TO EMPLOYMENT/CONTINUED PLAN PARTICIPATION

No person shall have any claim or right to be granted an Award, and the grant of an Award shall not be construed as giving the Employee recipient the right to be retained in the employ of a Participating Company. In addition, no Award under the Plan made during or in respect of any Performance Year or other period shall confer on an Employee any right or entitlement to, nor shall any Award impose any obligation on a Participating Company to provide, the same or any similar Award in the future, and all Plan awards are made wholly at the sole and unrestricted discretion of JPMorgan Chase.  Further, each Participating Company expressly reserves the right at any time to terminate an Employee or Eligible Employee employed by it or free from any liability or any claim under the Plan, except as provided herein or in any Award granted hereunder.

## SECTION 9

## AMENDMENT AND TERMINATION

JPMorgan Chase may amend or terminate the Plan or any portion hereof at any time and in any manner; provided that the subjective individual performance criteria set forth in Section 4.3 can only be amended prior to the expiration of the Performance Year to which such criteria pertain.

## SECTION 10

## STATUS OF PLAN

The Plan is intended to constitute an "unfunded" incentive compensation plan.  With respect to any payments not yet made to a recipient of an Award by a Participating Company, nothing herein contained shall provide any such individual with any rights that are greater than those of a general, unsecured creditor of the Participating Company.  No such individual shall at any time possess any interest whatsoever in the assets of the Participating Company. No payments under this Plan shall be taken into account as salary or other relevant compensation in determining an Employee's benefits under any compensation, pension or welfare plan (unless the plan specifically permits the inclusion of such Award), program or arrangement maintained by the Participating Company.   In addition, the terms of this document and any particular Award document granted to an Employee shall exclusively embody the complete terms of the Plan as applied to such an individual and shall supersede any other documents or representations that in any way relate to any Award.

## SECTION 11

## WAIVER

INDEX NO. 154006/2021

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/26/2021

8

No failure on the part of the Participating Company to exercise, and no delay in exercising, any right or power under the Plan shall operate as a waiver of any such right or power; nor shall any single or partial exercise preclude any other or further exercise of a right or power or the exercise of any other right or power.

## SECTION 12

## SEVERABILITY

Each provision of the Plan will be interpreted in such manner as to be valid and effective but if any provision shall be ruled invalid or unenforceable in any jurisdiction by any court of competent jurisdiction, the invalidity or unenforceability of such provision in such jurisdiction shall not affect any of the remaining provisions of the Plan and the invalid term shall be deemed to be replaced in such jurisdiction by a valid term which most closely reflects the intent of the Plan.

## SECTION 13

## ASSIGNMENT

If JPMorgan Chase shall be merged into or consolidated with another entity, this Plan shall be binding upon the entity surviving such merger or resulting from such consolidation. JPMorgan Chase shall require any successor to all or substantially all of JPMorgan Chase's equity or assets (whether by direct or indirect purchase, merger, consolidation or otherwise) to, either expressly or by operation of law, assume and agree to perform under this Plan as if no such succession had taken place, and all references to the "JPMorgan Chase" herein shall become references to such successor.

## SECTION 14

## GOVERNING LAW

The validity, construction and effect of the Awards, the Plan and any rules and regulations relating to the Plan shall be determined in accordance with the laws of the State of New York, without regard to conflicts of laws principles.

## SECTION 15

## EFFECTIVE DATE

The Plan shall be effective as of the Effective Date and shall continue until terminated by the JPMorgan Chase.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021



GREENBERG & KAPLAN, LLP
ATTORNEYS AT LAW

James S. Kaplan, Esq.
james@greenberg-kaplan.com
Direct: 646-383-3688

*BY EMAIL AND CERTIFIED MAIL*

Ms. Celia Cohen, Esq.
JP Morgan Chase Bank, N.A.
4 New York Plaza
New York, NY 10004

January 16, 2021

<u>Re: Alan Weintraub</u>

Dear Ms. Cohen:

This firm now represents Alan Weintraub, a former employee of the JP MORGAN PRIVATE Bank (the "Bank"). As you may know, Mr. Weintraub is a 63 year-old lawyer who was employed as a senior Fiduciary Officer with the Bank for 14 years in the Bank's estate settlement unit. He always received excellent performance reviews and was regularly given the maximum bonuses for employees at his level. He worked on the largest estates in which the Bank was named executor, and in 2019 his work generated in excess of $4 million in executor's fees for his unit, far more than anyone else in his group. In or about June, 2019 he had applied to be the team lead of the New York Office, but was passed over in favor of a younger employee with considerably less experience by Adam Clark, his then manager.

On November, 26 2019, Mr. Weintraub was, without warning, informed by the Bank that he was being placed on paid leave. On January 6, 2020, Mr. Weintraub was placed on indefinite unpaid leave. When he asked the Bank's HR representative about his bonus, or whether he was eligible for severance, he was told this would be later determined, as would his right to vested stock options. In July 2020 he was told that the was being terminated and that there would be no bonus or severance, nor would the Bank provide him with his vested stock award. Since that time, Mr. Weintraub has been unable to find any comparable position and has effectively been unable to work at all. At this pint he is in an extremely compromised financial position.

As we see it, the Bank's treatment of a loyal longtime employee is outrageous. He is at least entitled to his 2019 bonus of approximately $65,000, his restricted stock of approximately $10,000 and severance of approximately $150,000.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM

NYSCEF DOC. NO. 2

INDEX NO. 154006/2021

RECEIVED NYSCEF: 04/26/2021

While he would certainly like to settle this matter amicably without litigation, Mr. Weintraub has several causes of actions which he will have no choice but to pursue, including the following:

1. **LTIP-Stock Options**

The LTIP summary description clearly states that an employee is entitled to his shares once they vest if he is employed on such vesting date. Mr. Weintraub was clearly employed on the January 13, 2020, the vesting date. Mr. Weintraub is entitled to the 58 JP Morgan shares that vested on that date. We demand immediate release of such shares. In fact, in a email sent by Manny Siaw of JP Morgan on January 14,2020 (Jen Smith was copied), Mr. Weintraub was told that these stock options would vest before December 31, 2020.

2. **2019 Bonus**

Under New York case law, when an employee has worked for the entire year, he is entitled to his earned bonus even if he leaves before payment date. In this situation, Mr. Weintraub was still employed on payment date. Mr. Weintraub was hired in 2006 he was told by his Managing Director, Dan Scavone, that an annual bonus was part of his salary and, in fact, Mr. Weintraub received such bonus each year that he was employed at JP Morgan.

In fact, in 2019, Mr. Weintraub was responsible for bringing in over $4,000,000 in executor commissions and worked on the biggest estates at JP Morgan. In each of his 14 years that he worked at the Bank, Mr. Weintraub usually received a rating of "exceed expectations" as his employee file will verify. We feel it is unjust that JP Morgan not pay him said bonus and amounts to unjust enrichment to the Bank.

3. **Severance**

After reviewing the Bank's severance agreement, we do not see on what basis you are denying Mr. Weintraub his severance. He did not violate any Code of Conduct mandate in any way. His job was not replaced for over one year; in actuality, since JP Morgan was looking to fill a estate officer slot since 2018, his job was never replaced. Moreover, it is our understanding that a person in the Estate Settlement group who did violate the Code of Conduct was given severance and another person who violated the Code of Conduct was promoted. Why the disparate treatment?

4. **Age Discrimination**

Mr. Weintraub will be 64 years old in July. It seems very convenient that JP Morgan fired him at this time. He was never given a reason for his firing, so we can only assume that his age was a factor. Even when Mr. Weintraub was working at JP Morgan, he was passed over for the New York Team Lead, which was given to a woman who is not even 40, even though Mr. Weintraub had vastly more experience and was more qualified for the job. He is a lawyer in good standing in New York for almost 40 years, graduated in the top 5% of George Washington University Law School, has an LL.M. in Taxation from New York University Law School, was well liked

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021

and respected throughout the Bank and was in the Estate Settlement group for 14 years. The team lead went to a woman who is not a lawyer and was involved in estates for only 4-5 years. Why did this happen?

In summary, we believe that Mr. Weintraub has several causes of action against the Bank. His firing has caused him to lose over $2,000,000 in potential earnings and benefits. To this day, he is generally unemployed, except for occasional work he does for this firm now and again. He would like to resolve all these matters and avoid a costly and lengthy litigation. I would appreciate it if you would call me at your convenience so we may discuss the foregoing.

Sincerely,

*James S. Kaplan*

James S. Kaplan, Esq.

cc: Alan Weintraub, Esq.

FILED: NEW YORK COUNTY CLERK 04/26/2021 01:38 PM
NYSCEF DOC. NO. 2

INDEX NO. 154006/2021
RECEIVED NYSCEF: 04/26/2021



GREENBERG & KAPLAN, LLP
ATTORNEYS AT LAW

G & K

James S. Kaplan, Esq.
james@greenberg-kaplan.com
Direct: 646-383-3688

March 12, 2021

*VIA EMAIL*

Scott Koch
Assistant General Counsel
JP Morgan Chase Legal Department

Dear Mr. Koch,

I am writing to follow up on our discussion on Wednesday about Alan Weintraub and my letter with respect to his situation, a copy of which is attached.

As I indicated, after fourteen years in the JPMorgan Private Bank, Mr. Weintraub was precipitously terminated without any explanation and denied his 2019 bonus, his severance, and his vested stock options.

He has yet to be given any explanation for this action by the Bank, and until last Wednesday, to the best of my knowledge, no representative of the Bank has even been willing to speak to him or his representative.

I have asked that you review this matter. As a lawyer with 45 years of experience and a Chase customer for more than 40 years, I am shocked that the institution that I have known would act in this manner.

I will, as we discussed, ask that you reconsider the Bank's position and speak with me next Thursday after you have had a chance further to discuss this matter with your colleagues.

Very Truly Yours,

James S. Kaplan

390 Fifth Avenue, Suite 900, New York, NY 10018  Tel | 646-383-3688  Fax | 646-383-3693
www.greenberg-kaplan.com